**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| JOHN HALL, an individual; and LANCE HOPPEN, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  vs.<br><br>WARNER MUSIC GROUP CORP., a Delaware Corporation; WARNER MUSIC INC., a Delaware Corporation; and WARNER RECORDS, INC., a Delaware Corporation,<br><br>      Defendants. | Case No.  3:22-cv-00457 AAT<br><br>Assigned to Hon. Aleta A. Trauger |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND .....................................................................................3

LEGAL STANDARD...............................................................................................3

CALIFORNIA LAW GOVERNS PLAINTIFFS' CLAIMS.........................................4

ARGUMENT ..........................................................................................................4

I.      DEFENDANTS ARE NOT PARTIES TO THE CONTRACT UNDERLYING
        ALL OF PLAINTIFFS' CLAIMS, WHICH ALONE WARRANTS DISMISSAL. ..........4

II.     THE COMPLAINT FAILS TO ALLEGE CLAIMS AGAINST WM. .............................6

III.    PLAINTIFFS CANNOT ESTABLISH BREACH OF AN OBLIGATION
        CONCERNING FOREIGN DIGITAL STREAMING ROYALTIES. ..............................7

        A.      Plaintiffs Cannot Establish Breach of the 1974 Agreement Because It
                Provides For Lower Royalty Rates Than They Are Currently Being Paid.............7

        B.      Plaintiffs Lack a Viable Theory Divorced from the 1974 Agreement....................9

IV.     PLAINTIFFS' OTHER CLAIMS FAIL FOR SEPARATE AND ADDITIONAL
        REASONS. .............................................................................................................13

        A.      Plaintiffs' Account Stated Claim Fails as a Matter of Law. ................................13

        B.      Plaintiffs' Fraud Claim Fails Under Rule 9(b) and Rule 12(b)(6).........................14

        C.      Plaintiffs' Accounting Claim Fails as a Matter of Law. ......................................16

        D.      Plaintiffs' Implied Covenant Claim Fails as a Matter of Law. .............................17

        E.      Plaintiffs' Declaratory Relief Claim Fails as a Matter of Law. .............................19

        F.      Plaintiffs' Request for Rescission Fails as a Matter of Law..................................19

CONCLUSION.......................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akopian v. JPMorgan Chase Bank, N.A.*,
  CV 14-05760-RGK, 2014 WL 12591623 (C.D. Cal. Sept. 24, 2014) ....................................18

*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*,
  116 Cal. App. 4th 1375 (2004) ...............................................................................................13

*Baptist Physician Hosp. Org., Inc. v. Humana Mil. Healthcare Servs., Inc.*,
  481 F.3d 337 (6th Cir. 2007) ...................................................................................................11

*Barnhart v. Points Dev. US Ltd.*,
  No. 2:16-cv-02515-CAS(Ex), 2016 WL 3041036 (C.D. Cal. May 25, 2016) .........................5

*Bates v. Suntrust Mortg., Inc.*,
  No. 2:13-cv-01402-TLN-DAD, 2013 WL 6491528 (E.D. Cal. Dec. 10, 2013) ....................19

*Beecher v. Google N. Am. Inc.*,
  No. 18-cv-00753-BLF, 2018 WL 4904914 (N.D. Cal. Oct. 9, 2018) .......................................9

*Berns v. EMI Pub., Inc.*,
  No. 95 Civ. 8130(KTD), 1999 WL 1029711 (S.D.N.Y. Nov. 12, 1999) .................................8

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
  342 F.3d 634 (6th Cir. 2003) ...................................................................................................14

*Broad. Music, Inc. v. Davis*,
  No. CV 10-10089-RGK(FFMX), 2012 WL 13008124 (C.D. Cal. Mar. 30,
  2012) .........................................................................................................................................19

*Brooks v. Wells Fargo Bank, N.A.*,
  No. 3:12-0821, 2014 WL 345737 (M.D. Tenn. Jan. 30, 2014) ................................................9

*Cell-Crete Corp. v. Lexington Ins. Co.*,
  SACV 14-503 AG (ANx), 2014 WL 12601011, at *3–4 (C.D. Cal. July 30,
  2014) .........................................................................................................................................10

*In re CFLC, Inc.*,
  166 F.3d 1012 (9th Cir. 1999) .................................................................................................12

*Compton v. Midland Mortg.*,
  CV 16-00817-RGK, 2016 WL 7479418 (C.D. Cal. Apr. 19, 2016) ........................................17

*Crestview Cemetery Ass'n v. Dieden*,
  54 Cal. 2d 744 (1960) ...............................................................................................................10

ii

*Doe v. Vanderbilt Univ.*,
    No. 3:18-CV-00569, 2019 WL 4748310 (M.D. Tenn. Sept. 30, 2019)........................4

*Ellington v. EMI Music, Inc.*,
    24 N.Y.3d 239 (2014) ........................8

*Faulkner v. Arista Recs. LLC*,
    602 F. Supp. 2d 470 (S.D.N.Y. 2009)........................16

*FCC, LLC v. Mizuho Medy Co.*,
    No. 07CV0189 JAH (NLS), 2008 WL 11338403 (S.D. Cal. July 16, 2008) ........................14

*Fleet v. Bank of Am. N.A.*,
    229 Cal. App. 4th 1403 (2014) ........................17

*Friedman v. U.S. Bank Nat'l Ass'n*,
    No. CV16-2265-CAS(FFMX), 2016 WL 3226005 (C.D. Cal. June 6, 2016)........................16

*Gardner v. Watson*,
    170 Cal. 570 (1915) ........................13

*Gerritsen v. Warner Bros. Entm't Inc.*,
    112 F. Supp. 3d 1011 (C.D. Cal. 2015) ........................5, 6

*Greenfield v. Philles Recs., Inc.*,
    98 N.Y.2d 562 (2002) ........................8

*Guthrie v. Times-Mirror Co.*,
    51 Cal. App. 3d 879 (1975) ........................20

*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*,
    175 Cal. App. 4th 1306 (2009) ........................20

*Hataway v. McKinley*,
    830 S.W.2d 53 (Tenn. 1992)........................4

*Hedging Concepts, Inc. v. First All. Mortg. Co.*,
    41 Cal. App. 4th 1410 (1996) ........................10

*JMP Sec. LLP v. Altair Nanotechnologies, Inc.*,
    880 F. Supp. 2d 1029 (N.D. Cal. 2012) ........................16

*Lauter v. Rosenblatt*,
    No. CV 15-08481 DDP, 2020 WL 3545733 (C.D. Cal. June 30, 2020) ........................20

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
    176 F. Supp. 3d 949 (E.D. Cal. 2016)........................10

iii

*Liberty Surplus Ins. Corp. v. Ledesma and Meyer Constr. Co., Inc.*,
CV12-00900-RGK (SPx), 2012 WL 12896220, at *3 (C.D. Cal. June 19,
2012) ..................................................................................................................18

*Marks v. UMG Recs., Inc.*,
No. 2:21-cv-04043-MCS-JPR, 2022 WL 1433955 (C.D. Cal. Apr. 6, 2022) ................ *passim*

*U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*,
525 F.3d 439 (6th Cir. 2008) ..............................................................................15

*Merritt v. JP Morgan*,
No. 17-CV-06101-LHK, 2018 WL 1933478 (N.D. Cal. Apr. 24, 2018) ..............................17

*Morgan v. Church's Fried Chicken*,
829 F.2d 10 (6th Cir. 1987) ..................................................................................4

*Nadan v. Homesales, Inc.*,
No. CV F 11-1181 LJO SKO, 2011 WL 3584213 (E.D. Cal. Aug. 12, 2011) ......................11

*Nat'l Ins. Co. of Hartford v. Expert Auto. Reconditioning, Inc.*,
No. SACV 13-0873-DOC(JPRX), 2013 WL 6190591 (C.D. Cal. Nov. 24,
2013) ..................................................................................................................13

*Nelson v. Equifax Info. Svcs. LLC*,
522 F. Supp. 2d 1222 (C.D. Cal. 2007) ..............................................................10

*Olinick v. BMG Ent.*,
138 Cal. App. 4th 1286 (2006) ..............................................................................4

*Oracle USA, Inc. v. XL Global Servs., Inc.*,
No. C 09–00537 MHP, 2009 WL 2084154 (N.D. Cal. July 13, 2009) ..................16

*Oster v. OneWest Bank, F.S.B.*,
No. CV 12-00645 MMM, 2012 WL 13015020 (C.D. Cal. July 5, 2012) ..............12

*Overrated Prods, Inc. v. UMG Recs., Inc.*,
No. 19-56504, 2021 WL 3057066 (9th Cir. July 20, 2021) ..................................8

*Pagliara v. Johnston Barton Proctor & Rose, LLP*,
No. 3:10-cv-00679, 2012 WL 913256 (M.D. Tenn. Mar. 16, 2012) ....................19

*Patel v. AR Grp. Tennessee, LLC*,
No. 3:20-CV-00052, 2022 WL 2678733 (M.D. Tenn. July 11, 2022) ....................7

*Ponds v. Nationstar Mortg., LLC*,
No. CV15-8693 DMG(JPRX), 2016 WL 3360675, at *8 (C.D. Cal. June 3,
2016) ..................................................................................................................16

*Pridy v. Piedmont Natural Gas Co.*,
    458 F. Supp. 3d 806 (M.D. Tenn. 2020)................................................................5, 6, 8

*Reno Dealership Grp., LLC v. Gen Motors LLC*,
    No. 2:21-cv-00696-MCS-PD, 2021 WL 1583904 (C.D. Cal. Mar. 15, 2021) .........................9

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
    683 F.3d 239 (6th Cir. 2007) ...............................................................................14

*Santos v. Ocwen Loan Servicing, LLC*,
    No. 16-cv-01197-HRL, 2017 WL 24869 (N.D. Cal. Jan. 3, 2017) ...............................12

*Schaffer Family Invs., LLC v. Sonnier*,
    120 F. Supp. 3d 1028 (C.D. Cal. 2015) .................................................................11

*Se. Texas Inns, Inc. v. Prime Hospitality Corp.*,
    462 F.3d 666 (6th Cir. 2006) ...............................................................................5, 6

*Secrest v. Sec. Nat'l Mortg. Loan Trust*
    *2002-2*, 167 Cal. App. 4th 544 (2008) ................................................................12

*Smith v. JPMorgan Chase Bank, N.A.*,
    No. ED CV 14-01654-RGK(SP), 2014 WL 6886030 (C.D. Cal. Nov. 26,
    2014) ...................................................................................................................7

*Sorenson v. New Koosharem Corp.*,
    No. CV 15-01-01088 RGK, 2015 WL 12426149 (C.D. Cal. Oct. 15, 2015) ...............17, 18

*Spinelli v. Nat'l Football League*,
    96 F. Supp. 3d 81 (S.D.N.Y. 2015)..........................................................................8

*Super Chefs, Inc. v. Second Bite Foods, Inc.*,
    No. CV 15-00525 SJO, 2015 WL 12914331 (C.D. Cal. Aug. 25, 2015) ........................16

*Tanvilai v. Am. Econ. Ins. Co.*,
    No. SACV 07–01339–CJC(MLG), 2008 WL 11342952 (C.D. Cal. July 15,
    2008) .................................................................................................................14

*U.S. v. Bestfoods*,
    524 U.S. 51 (1998).................................................................................................5

*Vendeven v. Wyndham Vacation Resorts, Inc.*,
    No. 2:20-CV-00056, 2021 WL 5567033 (M.D. Tenn. Nov. 29, 2021)............................7, 10

*Waegemann v. Montgomery Ward & Co., Inc.*,
    713 F.2d 452 (9th Cir. 1983) ................................................................................20

*Walker v. Frontier Leasing Corp.*,
No. E2009-01445-COA-R3-CV, 2010 WL 1221413 (Tenn. Ct. App. Mar. 30, 2010) ..........................................................................................................................4

*Wall-Noon Corp. v. Hill*,
45 Cal. App. 3d 605 (1975) ..............................................................................10

*Wash. Mut. Bank, FA v. Super. Ct.*,
24 Cal. 4th 906 (2001) .......................................................................................4

*Williams v. Smith*,
465 S.W.3d 150 (Tenn. Ct. App. 2014) ...........................................................4

*Williams v. Warner Music Grp. Corp.*,
No. 2:18-cv-09691-RGK-PJW, 2019 WL 4266809 (C.D. Cal. Mar. 13, 2019)...............1, 5, 6

*Wilson v. HSBC Bank, N.A.*,
594 F. App'x 852 (6th Cir. 2014) .....................................................................4

*Wolf v. Super. Ct.*,
107 Cal. App. 4th 25 (2003) ............................................................................16

## Rules and Statutes

1 Witkin, Summary of Calif. Law, Contracts § 218 (11th ed. 2019)............................................11

Cal. Civ. Code § 1303(b) ..........................................................................................................11

Cal. Civ. Code § 1550 ...............................................................................................................11

Cal. Civ. Code § 1624(a)(1) ......................................................................................................12

Fed. R. Civ. P. 9(b) ..........................................................................................................4, 14, 15

Fed. R. Civ. P. 12(b)(6)..............................................................................................................5

Defendants Warner Music Group Corp. ("WMGC"), Warner Records Inc. ("WR"), and Warner Music Inc. ("WM") (collectively, "Defendants") respectfully submit this memorandum of points and authorities in support of their motion to dismiss the Class Action Complaint (ECF No. 1) ("Complaint" or "Compl.") of Plaintiffs John Hall and Lance Hoppen ("Plaintiffs").

## INTRODUCTION

This case represents just the latest attempt by the same group of plaintiffs' lawyers to claim that a recording artist was underpaid for foreign digital streaming royalties, despite the actual contract terms or the parties' prior course of dealing. As in the last case of this kind filed by counsel—which was dismissed on the pleadings with prejudice—Plaintiffs here demand that they be paid foreign digital streaming royalties at a 50% royalty rate based on 100% of revenues generated "at source." *Marks v. UMG Recs., Inc.*, No. 2:21-cv-04043-MCS-JPR, 2022 WL 1433955 (C.D. Cal. Apr. 6, 2022) (on appeal). And as in the last case, the claims fail. The law does not impose contractual obligations that are not only untethered to, but fundamentally inconsistent with, express contract terms and past practice. Indeed, the only difference between that last case and this one is that counsel have changed venue from California to Tennessee. But because the applicable law is the same, this action also should be dismissed with prejudice.

The Court need not even reach these fatal deficiencies in Plaintiffs' breach of contract theory to dispose of this case, for the simpler reason that Defendants are strangers to the contract underlying all of Plaintiffs' claims. Plaintiffs admit, and the face of their contract confirms, that the operative contract is between Plaintiffs and Elektra/Asylum Records ("Elektra/Asylum"), and neither Elektra/Asylum nor any alleged successor to Elektra/Asylum is named as a defendant. Compl. ¶ 25 & Ex. A. Plaintiffs suggest Defendants could be alter egos of each other, but another federal court in yet another case of this kind brought by the same group of plaintiffs' lawyers dismissed the same boilerplate allegations as deficient. *Williams v. Warner Music Grp. Corp.*, No.

2:18-cv-09691-RGK-PJW, 2019 WL 4266809, at *6 (C.D. Cal. Mar. 13, 2019).

But even if Plaintiffs belatedly propose to name Elektra/Asylum or an alleged successor as a defendant, Plaintiffs cannot avoid dismissal. Plaintiffs assert that no provision of their contract imposes an obligation to account for foreign digital streaming, and further admit that none sets a 50% royalty rate for foreign digital streaming based on 100% of revenues generated "at source." Compl. ¶¶ 4–5. That normally would suffice to dismiss a breach of contract case. But Plaintiffs' claims are particularly untenable because their contract expressly specifies royalty rates of either 4% or 6% (*i.e.*, not 50%) for foreign licensing (which necessarily encompasses foreign digital streaming), and expressly calculates royalties based on "the amount received by us [*i.e.*, Elektra/Asylum]" (*i.e.*, not revenues generated by Elektra/Asylum's foreign affiliates "at source"). *Id.* Ex. A ¶¶ 3(a)(i), (b), (f)(iii), 4(b).[1] Plaintiffs do not (and cannot) allege that they have received lower royalty rates for foreign digital streaming than those provided for under their contract.

Plaintiffs also cannot avoid dismissal by ignoring the express terms of their contract, and instead relying upon a purported course of dealing based on their mistaken and unsupportable reading of royalty statements. Compl. ¶ 52. The fatal flaw with any such theory is that Plaintiffs do not (and cannot) allege that they have *ever* been paid royalties for foreign digital streaming based on 100% of revenues received "at source." Plaintiffs also would need to allege a meeting of the minds and adequate consideration to amend their contract. Bare receipt of royalty statements does not satisfy either of those requirements, which is why another federal court recently dismissed with prejudice identical claims brought by the same group of plaintiffs' lawyers. *Marks*, 2022 WL 1433955, at *3–4.

---

[1] Plaintiffs' contract sets the royalty rate for licenses at the same royalty rate applied to sales, Ex. A ¶ 4(b), and sets the royalty rate for foreign sales at the U.S. rate of 8% multiplied by either 1/2 or 3/4 (*i.e.*, at 4% or 6%), depending on the applicable foreign territory (Ex. A ¶¶ 3(a) & (b) (and that amount is then calculated based on 90% of amounts received, Ex. A ¶ 3(f)(iii))).

2

Finally, Plaintiffs' remaining claims and requests for declaratory relief and recission suffer from multiple other and dispositive defects as detailed below that support dismissal with prejudice.

## FACTUAL BACKGROUND

Plaintiffs contend WMGC and WR have underpaid them for foreign digital streaming, which allegedly must be calculated at a 50% royalty rate based on 100% of revenues received "at source" without deductions or offsets. Compl. ¶¶ 4–5, 31, 52. Plaintiffs now seek to represent nationwide classes of, among others, persons or entities whose music was streamed internationally and who are or were not accounted to or paid for such exploitation based on revenues received by foreign affiliates of WMGC and WR "at source." *Id.* ¶¶ 1, 37–38.

Plaintiffs' individual claims depend on a supposed "practical construction" of their August 28, 1974, recording contract with Elektra/Asylum (the "1974 Agreement") and "impl[ied]" terms arising from a purported "course of performance and/or dealing" associated with royalty statements. Compl. ¶ 52. Plaintiffs do not identify any provision in their contract that allegedly obligates Elektra/Asylum to calculate royalties for foreign uses, such as for foreign digital streaming, using a 50% royalty rate or 100% of foreign revenues received "at source." *Id.* ¶¶ 1, 25–26 & Ex. A. To the contrary, Plaintiffs assert no provision in their contract obligates Elektra/Asylum to pay royalties for foreign digital streaming. *Id.* ¶¶ 2, 27, 52. Plaintiffs do not allege (because they cannot) that they have ever received royalties for foreign digital streaming based on 100% of revenues received "at source." And Plaintiffs do not allege (because they cannot) that they have been required to take any action under the 1974 Agreement since the 1970s—instead, Plaintiffs have merely been collecting royalties. *Id.* ¶¶ 9–10. Among other relief, Plaintiffs now seek declaratory relief and rescission. *Id.*, Prayer for Relief ¶¶ 2–11.

## LEGAL STANDARD

A complaint "must contain 'more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do.'" *Wilson v. HSBC Bank, N.A.*, 594 F. App'x 852, 855 (6th Cir. 2014). Courts can disregard "legal conclusions," "unwarranted factual inferences," *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and "allegations that are contradicted by documents that have been incorporated by reference in the complaint," *Doe v. Vanderbilt Univ.*, No. 3:18-CV-00569, 2019 WL 4748310, at *5 (M.D. Tenn. Sept. 30, 2019). In addition, claims sounding in fraud must be "state[d] with particularity." Fed. R. Civ. P. 9(b).

## CALIFORNIA LAW GOVERNS PLAINTIFFS' CLAIMS

Tennessee's conflict-of-law doctrine "provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014). The 1974 Agreement expressly provides that it "shall be deemed to have been made in the State of California" and lists California addresses for all of the parties, including Plaintiffs' counsel at the time. Compl. Ex. A at pp. 1 & 11. California law also applies because the 1974 Agreement contains a California choice-of-law clause. *Id.* Ex. A ¶ 18; *Williams*, 465 S.W.3d at 153; *Walker v. Frontier Leasing Corp.*, No. E2009-01445-COA-R3-CV, 2010 WL 1221413, at *5 (Tenn. Ct. App. Mar. 30, 2010) (Tennessee courts, "as a general rule, honor and enforce … choice of law … clauses"); *Hataway v. McKinley*, 830 S.W.2d 53, 54 (Tenn. 1992) (adopting Restatement (Second) of Conflicts for resolving choice-of-law questions for tort claims, which respects choice-of-law clauses); *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 916 (2001) (holding choice-of-law clauses govern all tort and contract claims arising from an agreement); *Olinick v. BMG Ent.*, 138 Cal. App. 4th 1286, 1299–300 (2006) (same).

## ARGUMENT

I.   **DEFENDANTS ARE NOT PARTIES TO THE CONTRACT UNDERLYING ALL OF PLAINTIFFS' CLAIMS, WHICH ALONE WARRANTS DISMISSAL.**

All of Plaintiffs' claims stem from an alleged breach of contract. Compl. ¶¶ 1–7, 24–38, 42(b). Plaintiffs even "reallege and incorporate" their breach of contract allegations as the basis

for every other count.  But Plaintiffs "entered into an Agreement with Elektra/Asylum Records," not with Defendants—a fact apparent on the face of their contract.  *Id.* ¶ 25 & Ex. A.

It is axiomatic that Plaintiffs "cannot maintain a breach of contract claim against an entity who is not a party to the contract."  *Barnhart v. Points Dev. US Ltd.*, No. 2:16-cv-02515-CAS(Ex), 2016 WL 3041036, at *3 (C.D. Cal. May 25, 2016) (granting motion to dismiss); *Se. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 675–78 (6th Cir. 2006) (affirming Rule 12(b)(6) dismissal of claims against nonsignatory); *Pridy v. Piedmont Natural Gas Co.*, 458 F. Supp. 3d 806, 816–18 (M.D. Tenn. 2020) (dismissing claims against nonsignatory).  Indeed, a federal district court disposed of all claims asserted against Defendant WMGC in another royalty dispute on precisely these grounds.  *Williams*, 2019 WL 4266809, at *6.  That plaintiff also asserted contract and non-contract claims against WMGC for an alleged underpayment of foreign digital streaming royalties.  *Id.*  Applying hornbook law, the district court dismissed WMGC with prejudice because it was not a party to the contract.  The only relevant difference between that case and this case is that Plaintiffs have named *three* non-parties as defendants, as opposed to one.

Plaintiffs may contend that Defendants can be held liable as parents, owners, or alter egos of Elektra/Asylum and each other.  Compl. ¶¶ 1, 15, 19–20.  This argument fails for two reasons.  First, "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries."  *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998).  Conclusory allegations of alter ego status are insufficient, which is why courts routinely reject alter ego theories absent "concrete allegations" that could plausibly warrant such extraordinary relief.  *See, e.g.*, *Pridy*, 458 F. Supp. 3d at 816–18 (granting Rule 12(b)(6) motion as to alter ego theories); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1042-44 (C.D. Cal. 2015) (rejecting alter ego allegations about "wholly-owned" and "completely dominated, directed, and controlled" subsidiary as insufficient).  In *Williams*, the last case about

5

foreign digital streaming against WMGC, the court rejected equally threadbare alter ego allegations at the motion to dismiss stage.  2019 WL 4266809, at *6.  This Court should as well.

Second, merely alleging "dominion and control of the parent over the subsidiary will not alone support alter ego liability."  *Se. Texas Inns, Inc.*, 462 F.3d at 674–78 (internal quotations omitted).[2]  Plaintiffs also must allege that respecting the corporate separateness of Defendants would, in effect, render the 1974 Agreement unenforceable, sanction "fundamental unfairness," and condone fraud or injustice.  *Pridy*, 458 F. Supp. 3d at 818.  For "extraordinary circumstances" to exist, the "injustice must be more than the breach of contract alleged in the complaint" because any breach of contract or tort could be described as an injustice; rather, Plaintiffs must plausibly allege a "shell game" or "sham" to abuse the corporate form to effect fraud or injustice.  *Se. Texas Inns, Inc.*, 462 F.3d at 674–81 (recognizing the fraud or injustice requirement would be "meaningless" if relying on an underlying claim sufficed to plead alter ego liability); *Gerritsen*, 112 F. Supp. 3d at 1042 (holding that, to invoke alter ego doctrine, "there must be an inequitable result if the acts in question are treated as those of the corporation alone").  Here, Plaintiffs do not allege that respecting corporate separateness would prevent them from seeking full relief from the party with whom they contracted (*i.e.*, Elektra/Asylum), dooming any theory of alter ego liability.

Plaintiffs' claims against Defendants thus fail as a matter of law because none is a signatory of the 1974 Agreement, and the Court should dismiss the action.

## II.   THE COMPLAINT FAILS TO ALLEGE CLAIMS AGAINST WM.

In addition to not being a counterparty to the 1974 Agreement, WM should be dismissed because the Complaint does not contain any substantive allegations against it.  Plaintiffs define "Defendants" in the first paragraph of the Complaint as WMGC and WR.  Compl. ¶ 1.  The counts

---

[2] Because Defendants are incorporated in Delaware (Compl. ¶¶ 11, 12, 18), Tennessee's choice-of-law rules may look to Delaware law on alter ego liability.  *Se. Texas Inns, Inc.*, 462 F.3d at 672 n.10.  For purposes of this motion, California, Delaware, and Tennessee law appear to be in accord.  *See id.* at 676 (noting "striking parallels between Delaware and Tennessee law").

and prayer for relief do not name WM. Aside from the caption, the Complaint refers to WM only twice in boilerplate. *Id.* ¶¶ 18, 22. Even if WM's omission from the definition of "Defendants" was inadvertent, the two WM-specific allegations cannot adequately state a claim. *See, e.g.*, *Patel v. AR Grp. Tennessee, LLC*, No. 3:20-CV-00052, 2022 WL 2678733, at *12 n.16 (M.D. Tenn. July 11, 2022) ("A complaint must contain factual matter sufficient to identify which allegations pertain to which defendant (rather than lumping all defendants together[]) . . . this alone likely renders the [complaint] subject to dismissal…."). WM thus should be dismissed from this action.

## III. PLAINTIFFS CANNOT ESTABLISH BREACH OF AN OBLIGATION CONCERNING FOREIGN DIGITAL STREAMING ROYALTIES.

Setting aside that Defendants are not counterparties to the 1974 Agreement, Plaintiffs' breach of contract claim—and their entire Complaint—fails because Plaintiffs do not adequately allege a breach of an enforceable obligation. *See, e.g.*, *Vendeven v. Wyndham Vacation Resorts, Inc.*, No. 2:20-CV-00056, 2021 WL 5567033, at *9 (M.D. Tenn. Nov. 29, 2021) (breach requires "the existence of an enforceable contract, a non-performance amounting to a material breach of that contract, and resulting damages"); *Smith v. JPMorgan Chase Bank, N.A.*, No. ED CV 14-01654-RGK(SP), 2014 WL 6886030, at *6 (C.D. Cal. Nov. 26, 2014).

### A. Plaintiffs Cannot Establish Breach of the 1974 Agreement Because It Provides for Lower Royalty Rates than They Are Currently Being Paid.

The premise of the Complaint is that the 1974 Agreement does not provide for foreign digital streaming royalties, but rather that Plaintiffs, having received royalties for foreign digital streaming, are entitled to increased royalties calculated by using a higher royalty base of 100% of "at source" revenues. Compl. ¶¶ 2, 27, 52. This premise cannot be squared with the law or the actual terms of the 1974 Agreement. As this Court has pointed out, "[a]s a matter of logic, … a party cannot bring suit for breach of contract while also admitting that there was no breach." *See*

7

*Pridy*, 458 F. Supp. 3d at 822.  If, as Plaintiffs assert, the 1974 Agreement does not provide for foreign digital streaming royalties, then Plaintiffs must establish some other basis to their claims.

To start, there is no automatic right to royalties for all forms of exploitation, and certainly not to royalties at a 50% royalty rate, absent a right grounded in contract.  *See, e.g.*, *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 122, 131–132 (S.D.N.Y. 2015) (granting motion to dismiss contract claim for unpaid royalties because "[n]on-royalty-bearing licenses [were] not excluded" from rights granted to label); *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 570–71 (2002) (holding royalty payments were not due because contract permitted various methods of exploitation, but only specified royalties for some of those methods).  There also is no automatic right to foreign royalties based on 100% of revenues received "at source," absent a right grounded in contract.  *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 245–48, 252 (2014) (holding as a matter of law that music company was not required to account for foreign royalties based on 100% of revenues received at source); *Berns v. EMI Pub., Inc.*, No. 95 Civ. 8130(KTD), 1999 WL 1029711, at *7 (S.D.N.Y. Nov. 12, 1999) (rejecting claim that contract required calculating foreign royalties based on 100% of revenues generated abroad); *see also Overrated Prods, Inc. v. UMG Recs., Inc.*, No. 19-56504, 2021 WL 3057066, at *1 (9th Cir. July 20, 2021) (affirming that, as a matter of law, contract did not require calculating royalties based on amounts received by "affiliates").

In addition, the 1974 Agreement expressly forecloses Plaintiffs' claims.  Contrary to Plaintiffs' contention, it sets royalty rates for "all sales" and for "license[s]" for "all other types of use" "outside of the United States" of 4% or 6%.  Compl. Ex. A ¶¶ 3(a)(i), (b), 4(b); *supra* n.1.  And under their contract, those rates are then applied to the "amount received by us [*i.e.*, Elektra/Asylum]" (Ex. A ¶ 4(b)), not revenues generated by Elektra/Asylum's foreign affiliates "at source."  Whether Plaintiffs want to characterize foreign digital streaming as a "sale" or "license" (their counsel has flipflopped on that point in prior cases of this kind), Plaintiffs do not

allege they have been paid at lower royalty rates than those specified in their contract.  Compl. ¶ 4 & Ex. B.

In sum, Plaintiffs cannot plausibly allege that they have been underpaid under the 1974 Agreement for foreign digital streaming, as any such claim is flatly inconsistent with their contract. The Court thus should therefore dismiss this action with prejudice.

### B.    Plaintiffs Lack A Viable Theory Divorced from the 1974 Agreement.

If past is prologue, Plaintiffs will dispute that the 1974 Agreement means what it says and resort to allegations about a purported "practical construction" or course of performance and/or dealing as requiring higher foreign digital streaming royalties.  Compl. ¶ 52.  If so, then Plaintiffs' claims are indistinguishable from those dismissed with prejudice in *Marks*.

First, Plaintiffs do not identify a "practical construction" of any provision within the 1974 Agreement that could give rise to an obligation to account for foreign digital streaming royalties at a 50% rate based on 100% of revenues received "at source."  *See, e.g.*, *Brooks v. Wells Fargo Bank, N.A.*, No. 3:12-0821, 2014 WL 345737, at *2–3 (M.D. Tenn. Jan. 30, 2014) (dismissing contract claim because plaintiff's allegations were "conclusor[y]" and plaintiff "ma[de] no effort to detail the alleged breach"); *Reno Dealership Grp., LLC v. Gen Motors LLC*, No. 2:21-cv-00696-MCS-PD, 2021 WL 1583904, at *2 (C.D. Cal. Mar. 15, 2021) (dismissing contract claim because failure to quote relevant provisions failed to give "fair notice" of alleged theory of breach); *Beecher v. Google N. Am. Inc.*, No. 18-cv-00753-BLF, 2018 WL 4904914, at *2 (N.D. Cal. Oct. 9, 2018) (dismissing contract claim because plaintiff failed to adequately allege the "specific contractual terms which were allegedly breached").  Plaintiffs cannot possibly offer such a construction when the contract sets royalty rates for all foreign sales and licenses of either 4% or 6%, calculated on less than 100% of revenues "at source."  Compl. Ex. A ¶¶ 3(a)(i), (b), (f)(iii),

4(b).[3]

Second, and for a host of independently dispositive reasons, Plaintiffs cannot allege a course of performance or dealing that obligates Defendants to pay higher royalties.

• The 1974 Agreement can be amended only in writing (Ex. A ¶ 17), and prohibits waivers absent a writing (*id.*); as a result, it may not be modified by an alleged implied term arising from a course of performance. *Cell-Crete Corp. v. Lexington Ins. Co.*, SACV 14-503 AG (ANx), 2014 WL 12601011, at *3–4 (C.D. Cal. July 30, 2014) (dismissing implied contract claim because "implied agreement[s] cannot modify or supersede" express terms requiring amendments to be in writing); *Nelson v. Equifax Info. Svcs. LLC*, 522 F. Supp. 2d 1222, 1230 (C.D. Cal. 2007) ("A court usually will not imply terms into an agreement that is fully integrated.").

• Even assuming Plaintiffs could avoid the integration and anti-waiver clause, "[t]here cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." *Wall-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975); *Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1419 (1996) (rejecting attempt to imply duty to compensate based on value of services when "express terms" addressed compensation); *Vendeven*, 2021 WL 5567033, at *9 ("A contract cannot be implied … where a valid contract exists on the same subject matter."). The 1974 Agreement contains express royalty provisions for foreign sales and licenses. Compl. Ex. A ¶¶ 3(a)(i), (b), 4(b).

• Even ignoring the express royalty provisions for foreign sales and licenses in the 1974 Agreement, Plaintiffs do not allege that Defendants have *ever* accounted to them for foreign digital streaming royalties at a 50% rate based on 100% of revenues received "at source." Plaintiffs

---

[3] A practical construction or course of dealing cannot contradict an unambiguous term. *See Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 964–67 (E.D. Cal. 2016). The "doctrine of practical construction can only be applied when the contract is ambiguous…." *Crestview Cemetery Ass'n v. Dieden*, 54 Cal. 2d 744, 754 (1960).

want to impose an obligation they admit has ***never*** been the parties' practice for foreign digital streaming and acknowledge was ***not*** the historic practice for foreign licensing before the advent of digital streaming. *See* Compl. ¶ 32 (describing the practice of calculating foreign royalties based on amounts received in the U.S. from foreign affiliates, instead of revenues "at source," from such foreign affiliates as "a relic" of historic practices). By definition, a course of dealing cannot obligate a party to engage in a practice that it has never previously undertaken and, if anything, contravenes historic practice. *See* Cal. Civ. Code § 1303(b).

- Even assuming Plaintiffs could allege a relevant past practice, a modification or amendment of an existing contract requires consideration to be enforceable. *See, e.g.*, *Nadan v. Homesales, Inc.*, No. CV F 11-1181 LJO SKO, 2011 WL 3584213, at *6 (E.D. Cal. Aug. 12, 2011) (granting motion to dismiss where plaintiff failed to allege consideration to support alleged loan modification); *Schaffer Family Invs., LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1048 (C.D. Cal. 2015) (dismissing contract claim where plaintiff failed to adequately allege consideration); Cal. Civ. Code § 1550. Plaintiffs have done nothing that constitutes "consideration" since performing for the creation of sound recordings. Like the artist in *Marks*, Plaintiffs have merely collected royalties, which is not "additional performance" and certainly not "bargained for and given" consideration. *Marks*, 2022 WL 1433955, at *3–4; *Nadan*, 2011 WL 3584213, at *6 ("The 'doing or promising to do what one is already bound to do cannot be consideration for a promise.'"); *accord* 1 Witkin, Summary of Calif. Law, Contracts § 218 (11th ed. 2019).

- Even assuming Plaintiffs could allege a cognizable theory for consideration, modification or amendment of an existing contract also requires mutual assent. *See, e.g.*, *Nadan*, 2011 WL 3584213, at *6; *Schaffer Family Invs., LLC*, 120 F. Supp. 3d at 1048 (dismissing contract claim for failure to allege adequately mutual assent); Cal. Civ. Code § 1550; *Baptist Physician Hosp. Org., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 481 F.3d 337, 350 (6th Cir. 2007) ("valid

modification requires the same mutuality of assent and meeting of the minds as required to make a contract in the first instance") (internal quotation omitted). Plaintiffs do not allege that Defendants ever assented to account for foreign digital streaming royalties in Plaintiffs' preferred manner. Plaintiffs allege the opposite: that Defendants *never* calculated their foreign digital streaming royalties that way. Compl. ¶¶ 4, 6 (alleging "no meeting of the minds"). At most, Plaintiffs allege that they (incorrectly) believed foreign digital streaming royalties were being calculated in a particular way based on a misreading of their royalty statements. *See id.* ¶¶ 5–6. That is exactly what the artist in *Marks* alleged, and incorrect beliefs about how to interpret the repeated delivery of royalty statements cannot establish a mutual agreement or "bargain". *Marks*, 2022 WL 1433955, at *3–4; *In re CFLC, Inc.*, 166 F.3d 1012, 1017 (9th Cir. 1999) ("Course of dealing analysis is not proper in an instance where the only action taken has been the repeated delivery of a particular form by one of the parties.").

- Even assuming Plaintiffs could overcome every other hurdle, Plaintiffs want to impose a contractual obligation that cannot be performed within a year, and they cannot satisfy the statute of frauds. Cal. Civ. Code § 1624(a)(1); *Secrest v. Sec. Nat'l Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544, 553 (2008) ("An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds."). The Complaint does not identify any writing that requires calculating foreign royalties (for streaming or otherwise) based on 100% of revenues received by Elektra/Asylum's foreign affiliates "at source" *and* requires Elektra/Asylum to do so in perpetuity. The statute of frauds thus independently supports dismissal of Plaintiffs' claims. *See, e.g.*, *Santos v. Ocwen Loan Servicing, LLC*, No. 16-cv-01197-HRL, 2017 WL 24869, at *3–5 (N.D. Cal. Jan. 3, 2017) (granting motion to dismiss where plaintiff could not allege facts to avoid statute of frauds as to purported contract modification); *Oster v. OneWest Bank, F.S.B.*, No.

CV 12-00645 MMM (RZx), 2012 WL 13015020, at *10 (C.D. Cal. July 5, 2012) (granting motion to dismiss where plaintiff had not pled facts to satisfy statute of frauds for alleged modification).

*     *     *

In sum, all of Plaintiffs' claims require them to establish an alleged obligation for Elektra/Asylum to account to Plaintiffs for foreign digital streaming at a 50% rate based on 100% of revenues received "at source," and Plaintiffs cannot establish any of the necessary predicates for such a purported contractual obligation. This case should be dismissed.

## IV.    PLAINTIFFS' OTHER CLAIMS FAIL FOR SEPARATE AND ADDITIONAL REASONS.

Because all of Plaintiffs' claims rest on a purported breach of contract, and that claim fails, this Court can dismiss the entirety of the Complaint on the above-stated grounds. Should the Court reach Plaintiffs' other claims, it can dismiss each on separate and independent grounds.

### A.    Plaintiffs' Account Stated Claim Fails as a Matter of Law.

For at least one hundred years, California courts have not permitted account stated claims unless the parties entered into an entirely new and different agreement to pay pursuant to an alternate arrangement. *Gardner v. Watson*, 170 Cal. 570, 573 (1915). Plaintiffs do not claim the parties abandoned and replaced the 1974 Agreement; they have been paid and continue to be paid royalties pursuant to their contract. Compl. ¶¶ 1, 4, 5, 27, 29, 61–64. Under California law, money allegedly owed under an express contract, or a purported debt predicated upon breach of an express contract, "cannot be the basis of an account stated." *Nat'l Ins. Co. of Hartford v. Expert Auto. Reconditioning, Inc.*, No. SACV 13-0873-DOC(JPRX), 2013 WL 6190591, at *3 (C.D. Cal. Nov. 24, 2013) (dismissing open account claim based on breach of insurance agreement); *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1396 n.9 (2004) ("moneys due under an express contract cannot be recovered in an action on an 'open book account'" absent a contrary agreement between the parties).

13

Plaintiffs suggest that because royalty statements reflect payments for foreign digital streaming, they constitute a new and binding agreement. Compl. ¶ 61. But a royalty statement is not an agreement, and Plaintiffs have not alleged either mutual consent or consideration that could transform royalty statements into a new, enforceable agreement. *Supra* Argument § III. Plaintiffs also do not allege (because they cannot) that their royalty statements promised that Elektra/Asylum would forevermore calculate foreign digital royalties in a particular manner. Plaintiffs thus cannot allege that "any understanding [was] reached between both parties as to the amount [owed]" under any supposed royalty-statement agreement, which further dooms this claim. *Tanvilai v. Am. Econ. Ins. Co.*, No. SACV 07–01339–CJC(MLG), 2008 WL 11342952, at *3 (C.D. Cal. July 15, 2008) (dismissing account stated claim); *FCC, LLC v. Mizuho Medy Co.*, No. 07CV0189 JAH (NLS), 2008 WL 11338403, at *5 (S.D. Cal. July 16, 2008) (dismissing account stated claim because "no allegations of a new, separate agreement concerning an amount owing plaintiff").

## B.   Plaintiffs' Fraud Claim Fails Under Rule 9(b) and Rule 12(b)(6).

Plaintiffs' fraud claim fails for two additional reasons—Plaintiffs fail to allege particularized facts, and their fraud claim is barred by California's economic loss doctrine.

First, Plaintiffs have failed to satisfy Rule 9(b)'s heightened pleading standard, which applies because Plaintiffs allege fraud and that, "common to all claims for relief," Defendants engaged in a "scheme" to "conceal" purported underpayments. Compl. ¶ 34. Plaintiffs must allege "at a minimum . . . the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (explaining Rule 9(b) serves to "provide fair notice to Defendants"); *see also Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2007) ("[C]laims based on fraud pose a high risk of abusive litigation.") (internal quotation marks omitted).

Just as in *Marks*, although Plaintiffs apply labels of "WHO," "WHAT," "WHEN," "WHERE," "HOW," and "WHY" to their putative fraud allegations, those allegations fall far short of Rule 9's requirements. *Compare* Compl. ¶ 36 *with* Ex. 1 hereto ¶¶ 34–39 (Second Amended Complaint in *Marks*) *and Marks*, 2022 WL 1433955, at *3–4 (dismissing fraud claim). Among other things, Plaintiffs fail to identify a specific time period (Compl. ¶ 36 (alleging the "WHEN" as "commencement of distribution via foreign streaming until the present")), a particular individual who allegedly made fraudulent statements (*id.* (alleging the "WHO" as "Defendants")), or a particular representation that royalties were being calculated based on 100% of revenues received "at source" by foreign affiliates. Plaintiffs also fail to explain when or how they relied on any misstatement or omission, the details of the purportedly fraudulent scheme, which foreign affiliates allegedly participate in the scheme, or when or how Plaintiffs discovered the alleged scheme. The Court in *Marks* dismissed essentially verbatim allegations as reflecting "no effort to narrow . . . serious fraud accusations" as required by Rule 9(b). *Marks*, 2022 WL 1433955, at *3–4.

Plaintiffs cannot achieve a different outcome by cutting and pasting the same deficient allegations into a complaint filed before a different federal court. They allege "a complex and far-reaching fraudulent scheme," which is why their fraud allegations "must be pleaded with particularity and the complaint must also provide examples of specific fraudulent conduct that are representative samples of the scheme." *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008). Plaintiffs cannot excuse their deficient allegations on the counterfactual notion that it would be impossible to discover the "scheme" absent an audit; Plaintiffs do not allege this suit occurred due to an audit. Compl. ¶¶ 35–36, 71. Moreover, Rule 9(b) exists to prevent litigants from leveraging vague allegations to open the door to discovery.

Second, this Court should dismiss Plaintiffs' fraud claims under California's economic loss doctrine, which does not permit an alleged failure to pay to serve as a basis for fraud where "[n]o

physical harm or exposure to liability for personal damages" occurred. *Oracle USA, Inc. v. XL Global Servs., Inc.*, No. C 09–00537 MHP, 2009 WL 2084154, at *7 (N.D. Cal. July 13, 2009) (dismissing fraud claim). Plaintiffs do not and cannot "allege any harm above and beyond a broken contractual promise," precluding their fraud claim. *Super Chefs, Inc. v. Second Bite Foods, Inc.*, No. CV 15-00525 SJO (FFMx), 2015 WL 12914331, at *3–4 (C.D. Cal. Aug. 25, 2015) (dismissing fraud claim premised on alleged misrepresentation that defendant would honor contract). Nor can Plaintiffs avoid the economic loss doctrine by accusing Defendants of concealing the alleged breach. *See, e.g.*, *JMP Sec. LLP v. Altair Nanotechnologies, Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012) (dismissing fraud claim under economic loss rule despite allegation that defendant "misrepresented . . . on numerous occasions that [it] would pay [plaintiff] the higher fee"). Plaintiffs' fraud claim should be dismissed on this basis as well.

### C. Plaintiffs' Accounting Claim Fails as a Matter of Law.

To maintain an accounting claim under California law, Plaintiffs must allege a relationship that could give rise to an obligation to furnish an accounting, such as a fiduciary relationship, and a balance due that can be ascertained only by an accounting. *Ponds v. Nationstar Mortg., LLC*, No. CV15-8693 DMG(JPRX), 2016 WL 3360675, at *8 (C.D. Cal. June 3, 2016) (dismissing accounting claim). The Complaint fails to satisfy either requirement. Plaintiffs do not allege a fiduciary relationship with Defendants. *See Friedman v. U.S. Bank Nat'l Ass'n*, No. CV16-2265-CAS(FFMX), 2016 WL 3226005, at *6 (C.D. Cal. June 6, 2016) (dismissing accounting claim due to absence of a fiduciary relationship or circumstances indicating defendant's control over plaintiff's business); *Wolf v. Super. Ct.*, 107 Cal. App. 4th 25, 27, 30–33 (2003) (author's right to contingent compensation and defendant's exclusive control over revenues did not give rise to a fiduciary relationship); *Faulkner v. Arista Recs. LLC*, 602 F. Supp. 2d 470, 481–83 (S.D.N.Y. 2009) (dismissing breach of fiduciary claim in light of "overwhelming tide of legal authority"

rejecting the existence of a fiduciary relationship between recording artists and record labels).

Plaintiffs also allege the right to recover a sum certain or a sum that can be made certain by calculation, namely, the monies Plaintiffs believe they are owed if foreign digital streaming royalties were calculated based on 100% of revenues earned "at source." Compl. ¶¶ 5, 7, 31. Whether Plaintiffs base their accounting claim on the 1974 Agreement, which specifies royalty rates of either 4% or 6% for foreign uses (Compl. Ex. A ¶¶ 3(a)(i), (b), 4(b)), or on an implied agreement to employ a particular formula (*i.e.*, a 50% royalty rate based on 100% of revenues "at source") (Compl. ¶¶ 9–10), royalties can be calculated without resort to an accounting. *Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1413 (2014) (affirming dismissal of accounting claim); *Merritt v. JP Morgan*, No. 17-CV-06101-LHK, 2018 WL 1933478, at *9 (N.D. Cal. Apr. 24, 2018) ("A 'complaint does not state a cause of action for an accounting where it shows on its face that none is necessary; *i.e.*, where the plaintiff alleges a right to recover a sum certain or a sum that can be made certain by calculation.'").

### D.  Plaintiffs' Implied Covenant Claim Fails as a Matter of Law.

Plaintiffs' implied covenant claim is entirely redundant of their breach of contract claim and should be dismissed. It relies "on the same alleged acts and seek[s] the same damages already sought in [their] companion claim for breach of contract," which is why, under California law, the claim "may be disregarded as superfluous." *Sorenson v. New Koosharem Corp.*, No. CV 15-01-01088 RGK (PJWx), 2015 WL 12426149, at *6 (C.D. Cal. Oct. 15, 2015).

To pursue a "claim for an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged." *Compton v. Midland Mortg.*, CV 16-00817-RGK (JCx), 2016 WL 7479418, at *6 (C.D. Cal. Apr. 19, 2016) (dismissing implied covenant claim with prejudice for failure to allege breach of a specific obligation). "[T]here is no breach of the implied covenant of good faith and

fair dealing where 'no express term exists on which to hinge an implied duty.'" *Sorensen*, 2015 WL 12426149, at *6 (dismissing implied covenant claim) (citation omitted). Here, Plaintiffs must allege express provisions in their contract require Defendants to pay royalties for foreign digital streaming at a 50% royalty rate *and* based on 100% of revenues received "at source." Plaintiffs do not (and cannot) allege either. Instead, they contend that their contract is silent. Compl. ¶ 2.

No amendment could save this claim because, despite what Plaintiffs allege, the 1974 Agreement is not silent on the subject of foreign royalties. As noted above, an implied term cannot contradict an express one; the contract expressly addresses royalties for foreign sales and licenses; and foreign digital streaming must be a sale or a license. *Supra* Argument § III. Plaintiffs also cannot allege that amounts retained by foreign affiliates were so unreasonably high as to deprive Plaintiffs of all or practically all foreign digital streaming royalties. *See, e.g.*, *Liberty Surplus Ins. Corp. v. Ledesma and Meyer Constr. Co., Inc.*, CV12-00900-RGK (SPx), 2012 WL 12896220, at *3 (C.D. Cal. June 19, 2012) (dismissing implied covenant claim where plaintiff failed to prove that defendant acted unreasonably in a manner that would defeat contract); *Akopian v. JPMorgan Chase Bank, N.A.*, CV 14-05760-RGK (PLAx), 2014 WL 12591623, at *3–4 (C.D. Cal. Sept. 24, 2014) (dismissing implied covenant claim that rested on "naked assertion, not fact"). Plaintiffs allege in conclusory fashion that Defendants "pay[] fees to the foreign affiliates at grossly higher than market rates for such services" (without alleging what they contend to be "market rates") and that the foreign affiliates "deduct[] a large percentage" off their digital streaming revenue before paying Defendants. Compl. ¶¶ 92(b), (f). That cannot suffice, particularly given that Plaintiffs' counsel has previously filed lawsuits against Defendant WMGC and other major record labels over purported "intercompany charges" and should be able to allege actual facts to demonstrate "grossly higher" market rates, if such facts exist (which they do not).

### E. Plaintiffs' Declaratory Relief Claim Fails as a Matter of Law.

Under California and Tennessee law, "[c]laims for declaratory relief are not independent causes of action, but rather the ultimate prayer for relief." *Bates v. Suntrust Mortg., Inc.*, No. 2:13-cv-01402-TLN-DAD, 2013 WL 6491528, at *4 (E.D. Cal. Dec. 10, 2013). "A plaintiff is not entitled to declaratory relief in the absence of a viable claim," *Pagliara v. Johnston Barton Proctor & Rose, LLP*, No. 3:10-cv-00679, 2012 WL 913256, at *9 (M.D. Tenn. Mar. 16, 2012), or when an "adequate remedy exists under another cause of action." *Bates*, 2013 WL 6491528, at *4. Here, Plaintiffs either have no viable claims, in which case they cannot pursue declaratory relief, or have viable claims that provide adequate remedies at law in the form of monetary damages. In either event, the declaratory relief claim serves no purpose in this context and should be dismissed. At a minimum, Plaintiffs have not adequately pled a basis for declaratory relief against Defendants under an alter ego theory (Compl. ¶¶ 96(d)–(e)), as the Complaint contains none of the facts necessary to disregard the corporate form. *See supra* Argument § I.

### F. Plaintiffs' Request for Rescission Fails as a Matter of Law.

Plaintiffs cannot seek rescission. Compl. ¶¶ 6, 58, 96(g) & Prayer No. 7. Plaintiffs want to keep all of the royalties paid under the 1974 Agreement, including for foreign digital streaming. *Id.* ¶¶ 7–8, 50–55. To "retain the benefits of the [] Agreements (*i.e.*, royalty payments under those agreements)," Plaintiffs must affirm their contract, which is incompatible with rescission. *Broad. Music, Inc. v. Davis*, No. CV 10-10089-RGK(FFMX), 2012 WL 13008124, at *6 (C.D. Cal. Mar. 30, 2012) (dismissing request for rescission because party sought to keep past royalties).

Plaintiffs also do not and cannot allege the total or near total destruction of consideration as is required for rescission for "frustration of purpose." Plaintiffs cannot plausibly claim the "purpose" of the 1974 Agreement was to secure a 50% royalty rate on foreign sales or licenses when they accepted royalty rates of either 4% or 6% for foreign sales and licenses. Compl. Ex. A

¶¶ 3(a)(i), (b), 4(b); *Lauter v. Rosenblatt*, No. CV 15-08481 DDP (KSx), 2020 WL 3545733, at \*5 (C.D. Cal. June 30, 2020) (dismissing rescission where "transactions would have continued to make sense even without" the provision allegedly frustrated). Moreover, this dispute does not concern the total or near total of Plaintiffs' royalties. Foreign digital streaming royalties represent a small fraction of their total royalties (less than 7% according to the royalty statement they rely upon), and the so-called "intercompany charge" accounts for a fraction of foreign digital streaming royalties, removing this dispute from the realm of frustration of purposes. Compl. Ex. B at 2 ($4,717.48 of $67,852.35); *Guthrie v. Times-Mirror Co.*, 51 Cal. App. 3d 879, 888 n.7 (1975) (frustration of purpose limited to "cases of extreme hardship"). Plaintiffs' desire for more money does not qualify as frustration of purpose. *Waegemann v. Montgomery Ward & Co., Inc.*, 713 F.2d 452, 454 (9th Cir. 1983) (holding "doctrine of frustration is inapplicable when an unforeseeable event merely makes performance . . . less profitable"); *Lauter*, 2020 WL 3545733, at \*4 ("Decreased profitability to one party, even to the point of a negative return, is not sufficient to establish frustration of purpose."); *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1336 (2009) (insufficient to assert change in circumstances "results in a loss"). Plaintiffs' request for rescission should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the action with prejudice.

Date: August 26, 2022                    Respectfully submitted,

By: */s/ Lucas T. Elliot*
    Lucas T. Elliot
    lelliot@fbtlaw.com
    FROST BROWN TODD, LLC
    150 3rd Avenue South, Suite 1900
    Nashville, TN 37201
    Telephone: (615) 251-5565

Rollin A. Ransom (*Pro Hac Vice*)
rransom@sidley.com
Sean A. Commons (*Pro Hac Vice*)
scommons@sidley.com
Lauren M. De Lilly (*Pro Hac Vice*)
ldelilly@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: (213) 896-6000

**Attorneys for Defendants**
**WARNER MUSIC GROUP CORP.,**
**WARNER MUSIC INC., and WARNER**
**RECORDS INC.**

## CERTIFICATE OF SERVICE

      I hereby certify that on August 26, 2022, I electronically filed the foregoing document with the Clerk of the U.S. District Court for the Middle District of Tennessee via the CM/ECF system.  I hereby certify that I have served the document on all counsel of record by a manner authorized by LR 5.01.

*/s/ Lucas T. Elliot*
_____
Lucas T. Elliot
